ROBERTS, J.
The appellant, USCardioVascular, Inc., appeals the trial court’s final summary judgment for the appellee, the Department of Revenue (DOR). The appellant argues that DOR does not have the authority to assess taxes on the total amount it billed as base rent, as that amount encompassed more than just the total rent it charged to the physician groups. We agree and reverse.
FACTS
The facts of this case are not in dispute. The appellant develops and leases special purpose medical centers and provides administrative, management, and support services to physician groups. The appellant and the physician groups enter into a Center Development, Administration and Management Agreement (Agreement) which sets out the rights, duties, and responsibilities of the parties. Article II of the Agreement, entitled “Definitions,” provides the following relevant definitions:
2.4 “Base rent” means the base rent amount due under the Lease which shall equal the Center Expenses[.]
* * *
2.7 “Center Expenses” shall mean Physician Group’s Share (as defined below) of all operating and non-operating expenses of the facility utilized for the Center ... including, without limitation:
(a) salaries, benefits and other direct costs (including without limitation any payroll expenses) for all Company employees leased to Physician Group ...,
(b) obligations under any real estate leases for the premises utilized for the Center,
(c) the expenses and charges incurred in conjunction with the Center and in conjunction with the operation of the Center, including without limitation, repairs and maintenance, postage, utilities, telephone, furniture, fixtures, equipment and other personal property, including operating leases for any of the foregoing,
*83 (d) personal property and intangible taxes assessed against Company’s assets utilized by Physician Group during the term of this Agreement,
(e) insurance related to the facility and personnel for the Center, including workers’ compensation insurance expenses for Company’s employees working at the Center and fire and general liability insurance (including Center liability insurance) premiums for the Center,
(f) the costs of any goods and supplies purchased for use or resale, and used or resold in conjunction with Center Services ...,
(g) the costs and expenses for Center start-up ...,
(h) the depreciation ... for any equipment or depreciable property owned or acquired by Company and used in connection with the Center ...,
(I) the costs of personnel engaged to provide services at or in connection with the Center ...,
Cj) expenses of the Center related to billing and collection services and payroll services in connection with the Center ...,
(k) [cjosts and expenses of the Company arising from or related to the management or administration of research projects undertaken at the Center, and
(l) property taxes, sales, use and other taxes associated with the business of the Center, and any and all other ordinary and necessary expenses incurred by the Company for the benefit of Physician Group in carrying out their respective obligations under this Agreement.
[[Image here]]
2.31 “Rental Fee” shall mean Base Rent.
[[Image here]]
2.33 “Service Fee” shall have the meaning given in Section 7.1.
Article VII of the Agreement, entitled “Financial Arrangements,” provides the following relevant provisions:
7.1 Service Fee. During the term of this Agreement, Company shall receive a “Service Fee” equal to a percentage of Center Net Income determined in accordance with Exhibit 7.1.
7.2 Rental Fee. During the term of the Lease and Leased Employee Agreement, Company shall receive the Rental Fee, and the Lease shall so provide.
7.3 Nature of Fees. Payment of the Rental Fee and the Service Fee is not intended to be, and shall not be interpreted or applied, as permitting the Company to share in Physician Group’s fees for medical services or any other services, but is acknowledged as the parties’ negotiated agreement as to the reasonable fair market value of the premises, equipment, and personnel that are the subject of the Lease and Leased Employee Agreement, and of the development, planning, administration and management services of the Company furnished under this Agreement, considering the nature and value of the services required and the risks assumed by the Company[.]
On a monthly basis, the appellant provides the physician groups with a financial summary and an invoice. The financial summary provides, inter alia, a breakdown of the center expenses. These include salaries and benefits, medical director fee, rent, maintenance, medical supplies, insurance, utilities, property taxes, office supplies, equipment leases, depreciation, patient meals, other, and medi *84 cal supplies adjustment. The sum of the center expenses and the sales tax is referred to as both the current month base rent and the rental fee. The invoice provides the total amount due for the month, broken down as the base rent, the service fee, and the sales tax due.
In June of 2004, after conducting an audit on the appellant for the period of November 1, 2001, to October 31, 2003, DOR issued a notice of proposed assessment to the appellant. The proposed assessment included additional sales tax due on items included in the amount billed as the base rent, specifically the center expenses for the salaries, benefits, and insurance of the employees leased by the appellant to the physician groups. The appellant filed an informal written protest and a petition for reconsideration. DOR, however, sustained its assessment. The appellant then filed a complaint in the trial court. The parties filed cross-motions for summary judgment. The trial court entered summary judgment for DOR. The trial court found that the Agreement identified what items were to be included in calculating the base rent amount, defined the rental fee to mean the base rent amount, and provided that the use of the premises was conditioned upon payment of the rental fee.
ANALYSIS
Summary judgment is proper only if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. See Menendez v. The Palms W. Condo. Ass’n, 736 So.2d 58, 60 (Fla. 1st DCA 1999). Thus, this Court’s standard of review is de novo. See id. at 60-61. It is undisputed that there is no genuine issue of material fact in the instant case. Accordingly, the issue before this Court is whether the trial court correctly determined that DOR was entitled to prevail as a matter of law.
Section 212.031(l)(a) provides that every person who engages in the business of renting or leasing any real property is exercising a taxable privilege, unless such property is otherwise exempt from taxation. Fla. Stat. (2001-2003). Section 212.031(1)(c) provides:
For the exercise of such privilege, a tax is levied in an amount equal to 6 percent of and on the total rent ... charged for such real property by the person charging or collecting the rental ... fee. The total rent ... charged for such real property shall include payments for the granting of a privilege to use or occupy real property for any purpose and shall include base rent, percentage rents, or similar charges. Such charges shall be included in the total rent ... subject to tax under this section.... In the case of a contractual arrangement that provides for both payments taxable as total rent ... and payments not subject to tax, the tax shall be based on a reasonable allocation of such payments and shall not apply to that portion which is for the nontaxable payments.
Fla. Stat. (2001-2003) (emphasis added).
In the Agreement, the terms base rent, rental fee, and center expenses are used interchangeably and given the same meaning. The sum of the center expenses encompasses the base rent amount. Some of the center expenses are taxable as total rent, such as the rent, property taxes, maintenance, utilities, and insurance. See § 212.031(1)(e), Fla. Stat. (2001-2003); Fla. Admin. Code R. 12A-1.070(4)(c)-(e); Fla. Admin. Code R. 12A-1.070(12). Some of the center expenses, however, are not subject to tax, such as salaries, benefits, and insurance for the employees leased by *85 the appellant to the physician groups.[1] Thus, it is clear that the Agreement provides for both payments taxable as total rent and payments not subject to tax. As a result, under section 212.031(l)(c), DOR only has the authority to assess taxes on the center expenses that are taxable as total rent, not on the total amount billed as base rent.
We note that, although undoubtedly a poor choice of words by the appellant, the terms used in the Agreement are of no consequence in the instant case. Section 212.031(l)(c) requires only that the contractual arrangement between the parties provide for both payments taxable as total rent and payments not subject to tax. This requirement has been met in the instant case.
For these reasons we conclude that the trial court erred in entering summary judgment for DOR. DOR does not have the authority to assess taxes under section 212.031(l)(c) on the total amount billed as base rent, as that amount encompasses more than just the total rent charged. Therefore, we hold that DOR was not entitled to prevail as a matter of law.
Because it appears that there may be remaining issues as to whether all of the center expenses that the appellant claims are excluded from taxation are in fact excluded, we REVERSE and REMAND for proceedings consistent with this opinion.
LEWIS, J., concurs; BENTON, J., DISSENTS with opinion.

. On July 1, 1987, the legislature enacted an excise tax on the sale of services and a complementary excise tax on the use of services in Florida. See § 212.059, Fla. Stat. (1987). Effective January 1, 1988, however, the legislature repealed section 212.059. See Ch. 87-548, § 37, at 51, Laws of Fla. Subsequently, the only services that appear to be taxable in Florida include detective, burglary, and other protection services and non-residential cleaning and pest control services. See §§ 212.05(Z)(i)l.a. & 212.05(Z)(i)l.b., Fla. Stat. (2001-2003). '